Dariush Adli, Esq., SBN 204959
adli@adlilaw.com
Jacob Mojarro, Esq., SBN 194992
Jacob.mojarro@adlilaw.com
ADLI LAW GROUP, P.C.
12400 Wilshire Blvd., Suite 1460
Los Angeles, California 90025
Telephone: (213) 623-6546
Facsimile: (213) 623-6554

Attorneys for Defendants MITT LARY FAMILY PRACTICE, LLC and MALIKA ARYANPURE

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California Corporation;<br><br>*Plaintiff/Counterclaim Defendant*,<br><br>v.<br><br>MITT LARY FAMILY PRACTICE, LLC, an Alabama limited liability company;<br>MALIKA ARYANPURE, an individual,<br><br>*Defendants/Counterclaim Plaintiff*. | Case No. 8:23-cv-00936-MEMF-DFM<br><br>**DEFENDANTS MITT LARY FAMILY PRACTICE, LLC'S AND MALIKA ARYANPURE'S SECOND AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| MITT LARY FAMILY PRACTICE, LLC, an Alabama limited liability company;<br>MALIKA ARYANPURE, an individual,<br><br>*Third-Party Plaintiff,*<br>v.<br><br>CYNOSURE, LLC, a Delaware Corporation,<br><br>*Third-Party Defendants.* | |

**DEFENDANTS' SECOND AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT**

# SECOND AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

For its First Amended Counterclaims against Counterclaim Defendant BALBOA CAPITAL CORPORATION ("BALBOA") and Third-Party Complaint against Third-Party Defendant CYNOSURE, LLC ("CYNOSURE"), Counterclaim and Third-Party Plaintiffs MITT LARY FAMILY PRACTICE, LLC and MALIKA ARYANPURE (together, "Counterclaim and Third-Party Plaintiffs") allege as follows:

## I. NATURE OF DISPUTE

1. Counterclaim and Third-Party Plaintiffs entered into a financing agreement for the purchase of a laser equipment on or about August 2019. Counterclaim and Third-Party Plaintiffs complied with the terms of the agreement in question and made monthly payments to BALBOA for several years until performance was excused due to the devastating consequences of the global coronavirus pandemic outbreak that changed the world, frustrated the purpose of the contract and made performance impracticable for Counterclaim and Third-Party Plaintiffs. Notwithstanding the foregoing, Counterclaim and Third-Party Plaintiffs actively attempted to reach an amicable resolution with BALBOA. It is in these circumstances that BALBOA, in total disregard of this unprecedent crisis and Counterclaim and Third-Party Plaintiffs' good faith efforts to find a solution, responded by filing a lawsuit and demanding even more money to Counterclaim and Third-Party Plaintiffs.

## II. PARTIES

2. Counterclaim and Third-Party Plaintiffs MALIKA ARYANPURE ("Dr. Aryanpure") is and at all times herein mentioned was, an individual residing in the state of Alabama. MALIKA ARYANPURE is a Doctor of Medicine specializing in cosmetic surgery and related treatments.

3. Counterclaim and Third-Party Plaintiffs MITT LARY FAMILY

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

3071.201

PRACTICE, LLC, ("MITT LARY") is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Alabama with its principal place of business in Alabama. Mitt Lary is a medical practice owned by Dr. Aryanpure.

4. Counterclaim Defendant BALBOA CAPITAL CORPORATION ("BALBOA" or "Lender") is, and all times herein mentioned was, a corporation organized and existing under the laws of the State of California with its principal place of business located at 575 Anton Boulevard, 12th Floor, in the City of Costa Mesa, County of Orange, State of California. BALBOA at all times herein mentioned was a licensed California Finance Lender, CFL License No. 6032159, currently inactive.

5. Third-Party Defendant CYNOSURE, LLC ("CYNOSURE") is, and all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 5 Carlisle Road, City of Westfield, State of Massachusetts. CYNOSURE marketed and sold the medical device at issue in the lawsuit to MITT LARY in or around July 2019.

6. At all times herein mentioned, each and every Counterclaim and Third-Party Defendants were the agent, partner, principal and employee, co-conspirator, co-venturer, and/or aided and abetted of each and every of the remaining Counterclaim and Third-Party Defendants and were at all times mentioned acting within the course and scope of such agency and employment.

7. As alleged in greater detail below, each and every Counterclaim and Third-Party Defendants knowingly and willfully entered into a common design, plan, and agreement with, to perpetrate the wrongs against Counterclaim and Third-Party Plaintiffs, and should be held vicariously liable.

### III. GENERAL ALLEGATIONS

8. In 2019, CYNOSURE had employed high pressure sales tactics in marketing, CYNOSURE's products, which involved sales representatives making "cold calls" to medical practices like MITT LARRY and represent to the respective

doctor or medical practice that it had selected its "highly respected medical practice and trusted skills" to benefit from an exclusive business offer from CYNOSURE.

9. During this time, a CYNOSURE sales agent "Cassandra" had repeatedly contacted MITT LARY to promote the sale of CYNOSURE's products. Cassandra was able to establish a friendly rapport through continuous conversations with Dr. Aryanpure and was urging her to obtain for MITT LARY a cosmetic medical device manufactured by CYNOSURE, Tempsure®, advertised as using a radiofrequency (RF) platform to provide aesthetic non-invasive skin tightening procedures (the "Equipment").

### A. Counterclaim and Third-Party Plaintiffs were Fraudulently Induced to Sign a Financing Agreement

10. With respect to the Equipment, Cassandra made the following misrepresentations to Dr Aryanpure: (a) the use of the Equipment by MITT LARY in its Medical Practice will inevitably generate significant profits; (b) that CYNOSURE would provide continuous and extensive technical training to MITT LARY's medical staff and employees on how to operate the Equipment; (c) that CYNOSURE would handle the marketing of the Equipment and provide all brochures and marketing material the various treatments MITT LARY could offer with the Equipment; and (d) that CYNOSURE would support the business development surrounding the Equipment for MITT LARY to build a clientele base.

11. MITT LARY did not want to invest the upfront capital in the Equipment, which was priced at over $180,000. However, Cassandra continued to pressure MITT LARY to purchase the Equipment. During her conversations with Dr. Aryanpure, Cassandra represented that CYNOSURE offered financing options for the purchase of the Equipment and endorsed BALBOA as their exclusive financing partner. Cassandra further represented to Dr. Aryanpure that MITT LARY could *only* purchase the Equipment through the financing provided by BALBOA.

12. As part of CYNOSURE''s efforts to finalize the sale of the Equipment

to MITT LARY, Cassandra went to meet with Dr. Aryanpure on or around July 23, 2019, to discuss the terms for an Equipment Financing Agreement ("EFA") with BALBOA. At this meeting, Cassandra failed to disclose that BALBOA was a separate company and did not confirm whether she or CYNOSURE were authorized to discuss the EFA on behalf of BALBOA. Cassandra further represented to Dr. Aryanpure that MITT LARY could cancel the EFA at any time.

13. Cassandra made various misrepresentations with respect to the EFA, by directly stating to Dr Aryanpure; (e) that the amount of new businesses generated by MITT LARY's promotion and use of the Tempsure®, RF Platform, would be more than sufficient revenue to cover the monthly payments due under the EFA; (f) that only BALBOA could finance MITT LARY's purchase of the Equipment; and (g) that BALBOA would provide "extremely favorable" loan terms and interest rates to MITT LARY in the EFA, yet never disclosed the terms and interest rates; and (h) that MITT LARY could cancel the EFA at any time.

14. Through the statements and representations made by Cassandra, Counterclaim and Third-Party Plaintiffs understood that CYNOSURE and BALBOA held joint interests and were part of the same business. As a result of CYNOSURE's representations, MITT LARY was induced to sign the Equipment Financing Agreement ("EFA") with BALBOA on or about July 23, 2019. The EFA was countersigned by BALBOA on or about August 1, 2019,

15. Under the terms of the EFA, BALBOA was to finance the full price of the Equipment as presented by CYNOSURE, in the amount of One Hundred and Eighty-Four Thousand, Nine Hundred and Eighty-Two 50/100 Dollars ($184,982.50), which was to be remitted through a wire transfer payable to CYNOSURE's account. The payment terms of the EFA required MITT LARY to make sixty-six (66) monthly payments to BALBOA in the amount of $99.00 for payments 1-6 and the amount of $4,205.50 for payments 7-66. The EFA also contained terms for personal guaranty by Dr. Aryanpure (the "Guaranty")

16. BALBOA at all relevant times mentioned herein was a licensed California Finance Lender, License No. 6032159, currently in Inactive Status. As a finance lender, BALBOA was required to comply with the California Financing Law, California Finance Code Sections 22000 *et. seq*. and the specific subsections regulating the financing of a commercial loan.

17. After Dr. Aryanpure signed the EFA, neither Cassandra nor anyone else from CYNOSURE reached out to MITT LARY to offer the support Cassandra promised would come with the Equipment. Despite the Equipment not performing as promised and MITT LARY immediately facing numerous unexpected problems with using the Equipment, Counterclaim and Third-Party Plaintiffs continuously performed their obligations and sent monthly payments to BALBOA, until it became impossible.

**B.  Covid-19 outbreak frustrated the purpose of the EFA and rendered performance by Counterclaim and Third-Party Plaintiffs temporarily impossible.**

18. In late 2019, the outbreak of the novel Coronavirus Disease 2019 ("COVID-19") had started in China, and shortly after the World Health Organization declared COVID-19 a Public Health Emergency of International Concern.

19. In February and March 2020, COVID-19 was by then declared worldwide pandemic and in response to the large spread in the United States, both Federal and State governments initiated severe restrictions to fight the spread of COVID-19, such as the closure of all unessential practices and businesses and stay at home orders requiring all individuals to stay home unless furthering essential tasks such as grocery shopping.

20. On March 19, 2020, the State Health Officer of Alabama issued the Statewide Order 'Suspending Certain Public Gatherings Due to Risk of Infection by Covid-19' The Statewide Order was pursuant to the Code of Alabama *1975* § 22-2-2(4), which authorizes the State Health Officer, on behalf of the State Board of Health,

to direct those conditions prejudicial to health in public places within the State be abated.

21. By the end of March 2020, multiple Federal and state regulations have been implemented requiring individuals to stay at home unless they are furthering essential tasks; to respect social distances at all times, which involved keeping a distance of six feet from one another at all times; and the closure of non-essential businesses.

### C. Counterclaim and Third-Party Plaintiffs Could no Longer Comply with terms of EFA.

22. In light of this sudden and unimaginable outbreak, Counterclaim and Third-Party Plaintiffs closed their medical practice on or about March 2020 in order to protect the health and safety of the patients and employees and to comply with corresponding government orders and guidelines. As a result, Counterclaim and Third-Party Plaintiffs, as many other individuals and businesses, have been drastically harmed by this global pandemic and suffer from its economic impact.

23. Because COVID-19 regulations imposed a mandatory distance of 6 feet between all individuals, Counterclaim and Third-Party Plaintiffs' medical practice-- which included the use of the Equipment in close contact with the faces and bodies of patients- had been prohibited by the COVID-19 health regulations. The unforeseeable and mandatory suspension of Counterclaim and Third-Party Plaintiffs' medical practice, for an undetermined amount of time, resulted in an absence of income as the operation of MITT LARY constitutes Counterclaim and Third-Party Plaintiffs' main source of revenue.

24. As a result, after complying with their obligations under the EFA for approximatively nine months, Counterclaim and Third-Party Plaintiffs came to the realization that moving forward, and for an uncertain period of time, they could not keep up with the monthly payments due to BALBOA under the EFA as originally contemplated. The issue faced by Counterclaim and Third-Party Plaintiffs was not a

minor delay of available money, but rather the total absence of a foreseeable permanent reopening MITT LARY, in a manner that would generate a continuous and stable source of income and will permit Counterclaim and Third-Party Plaintiffs s to comply with their monthly payment obligations under the EFA. Therefore, before the next monthly payment was due, Counterclaim and Third-Party Plaintiffs reached out to BALBOA to find a reasonable and amicable solution.

25. Based on the unprecedent and unexpected change of circumstances caused by COVID-19 pandemic and Counterclaim and Third-Party Plaintiffs good faith compliance with the terms of the EFA up until that time; Counterclaim and Third-Party Plaintiffs expected BALBOA to make good faith efforts to find a reasonable solution, but this was not the case. Rather, in total disregard of Counterclaim and Third-Party Plaintiffs' circumstances, BALBOA continued to make withdrawals of the monthly amounts from Counterclaim and Third-Party Plaintiffs' bank account. However, the requested amounts were not available in Counterclaim and Third-Party Plaintiffs' bank account.

26. Instead of attempting to find a solution with Counterclaim and Third-Party Plaintiffs, BALBOA, filed a complaint on May 27, 2020 in California Superior Court entitled, *Balboa Capital Corporation v. Mitt Lary Family Practice LLC, et al.,* Case No. 30-2020-01146549-CU-CL-CJC (Cal. Supr.) (hereinafter "*Balboa I*") and demanded even more money from Counterclaim and Third-Party Plaintiffs. *Balboa I* involved essentially the same allegations and causes of action as being alleged in the above captioned Complaint. The parties vigorously litigated *Balboa I* over three years, including extensive discovery, numerous discovery motions, and several continuations of the trial date. Trial was scheduled to begin on October 9, 2023. Without any prior notice or explanation, after three years of litigating *Balboa I,* BALBOA voluntarily dismissed *Balboa I* without prejudice on May 16, 2023. Having delayed adjudication of the underlying dispute between the parties, BALBOA now believes that it is its right to immediately receive the shocking amount of

$242,508.01, plus interests.

27. Since that time BALBOA had refused to provide an extension of time or forbearance on MITT LARY's payment obligations under the EFA. Despite offers by the Counterclaim and Third-Party Plaintiff, BALBOA has refused to permit MITT LARY to continue the previous monthly payments and has instead declared the entire amount under the EFA, plus interest and attorney fees, due and payable. Counterclaim and Third-Party Plaintiffs therefore respectfully request the Court to order the equitable and legal relief requested herein, including a declaration as to the extent to which Counterclaim and Third-Party Plaintiffs s monthly payments was and is abated and a reformation or rescission of the EFA accordingly.

## FIRST CAUSE OF ACTION
## BREACH OF ORAL CONTRACT
### (Against CYNOSURE)

28. Counterclaim and Third-Party Plaintiffs repeat and reallege each and every allegation set forth above as if set forth fully herein.

29. As alleged with more particularity in the allegations set forth above, CYNOSURE sold the Equipment to MITT LARY. Accordingly, CYNOSURE entered into an oral contract with Counterclaim and Third-Party Plaintiffs, wherein in exchange for MITT LARY's purchase of the Equipment and Dr. Aryanpure's Guaranty by executing the EFA, CYNOSURE agreed to provide the following valuable performance: guarantee Counterclaim and Third-Party Plaintiffs' successful use and profit generation from the Equipment; to provide training, business support and marketing materials for Counterclaim and Third-Party Plaintiffs; build up clientele for Counterclaim and Third-Party Plaintiffs; and other affirmations of fact as terms forming the basis of the oral contract.

30. The terms of the oral contract were clear enough that both the Counterclaim and Third-Party Plaintiffs and CYNOSURE could understand what each was required to do and each agreed to the terms.

ADLI LAW GROUP, P.C.
(213) 623-6546

2996.201

31. As alleged with more particularity in the allegations set forth above, Counterclaim and Third-Party Plaintiffs fully performed their obligations under the oral contract by purchasing the Equipment through the execution of the EFA.

32. Through Counterclaim and Third-Party Plaintiffs' performance on the oral contract, CYNOSURE received the full bargained for compensation for the Counterclaim and Third-Party Plaintiffs execution of the EFA. Despite CYNOSURE receiving the full benefit of the funds obtained from financing of the purchase of the Equipment, CYNOSURE's sale of the Equipment, CYNOSURE failed to perform any of the agreed promises under the terms of the oral contract.

33. As the foreseeable and actual result of the CYNOSURE's breach of contract, Counterclaim and Third-Party Plaintiffs were damaged in the amount that was paid to finance the Equipment, including all sales price, tax, principal, interest and markups, as well as all amounts Counterclaim and Third-Party Plaintiffs' may be found liable by executing the EFA. Counterclaim and Third-Party Plaintiffs were also further harmed by all amounts spent in efforts to support the business and advertise the Medical Practices use of the Equipment.

34. As alleged with more particularity in the allegations set forth above, Counterclaim and Third-Party Plaintiffs were harmed by these breaches, including Counterclaim and Third-Party Plaintiffs' inability to use the Equipment for its business, and yet still paid substantial amounts under the EFA. Subsequently, Counterclaim and Third-Party Plaintiffs have incurred even more damages in attorneys' fees and legal costs involved in defending against the complaint filed by BALBOA in *Balboa I* and in this lawsuit.

35. As a proximate result of this conduct, Counterclaim and Third-Party Plaintiffs have been damaged in an amount according to proof, but in an amount no less than $300,000.00.

/ / /

/ / /

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against CYNOSURE)

36. Counterclaim and Third-Party Plaintiffs repeat and realleges each and every allegation set forth above as if set forth fully herein.

37. Every contract includes an implied covenant of good faith and fair dealing, whereby each party agrees not to engage in any acts which would unfairly interfere with the other party's rights to the benefits to the contract. California courts have defined "good faith" in a contract to mean honesty of purpose without any intention to mislead or to take unfair advantage of another.

38. As alleged in the detail in the cause of action above, Counterclaim and Third-Party Plaintiffs and CYNOSURE entered into an oral contract for CYNOSURE's performance on their oral promises in exchange for Counterclaim and Third-Party Plaintiffs' purchase of the Equipment. Under the oral contract CYNOSURE owed Counterclaim and Third-Party Plaintiffs a duty of honesty of purpose without any intention to mislead or to take unfair advantage of another.

39. Cynosure breached its duty of good faith by failing to perform the promises under the oral contract, by misleading Counterclaim and Third-Party Plaintiffs to believe that CYNOSURE's required Lender, BALBOA, and CYNOSURE were part of the same business; and by misrepresenting the terms of the EFA with the Lender.

40. Counterclaim and Third-Party Plaintiffs have performed all duties under the oral contract with CYNOSURE and were excused for performance under the EFA with the Lender. While CYNOSURE breached the oral contract as alleged above, CYNOSURE's breach of a specific provision of the oral contract is not prerequisite. The covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.

10

**DEFENDANTS' SECOND AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT**

41. In committing the breaches of contract detailed above in the General Allegations and First Cause of Action, CYNOSURE did not act fairly, honestly or in good faith and therefore breached the implied covenant of good faith and fair dealing.

42. As alleged with more particularity in the allegations set forth above, Counterclaim and Third-Party Plaintiffs were harmed by these breaches, including being denied the benefit of the bargain to assure its successful use of the Equipment for its business, and yet still paid nearly $13,300 to BALBOA and more than $25,000.00 to support its business. Subsequently, Counterclaim and Third-Party Plaintiffs have incurred an even larger amount of attorneys' fees and costs defending *Balboa I* and this instant court action commenced by BALBOA.

43. The violations detailed above were intentional, and a tort-based recovery for breach of the covenant of good faith and fair dealing is appropriate here because of the special relationship between the contracting parties.

44. As a proximate result of this conduct, Counterclaim and Third-Party Plaintiffs have been damaged in an amount according to proof.

45. CYNOSURE's conduct and each of them was fraudulent, malicious, and oppressive within the meaning of section 3294 of the California Civil Code, in that they intended to cause injury to Counterclaim and Third-Party Plaintiffs and acted despicably, with a willful and conscious disregard of the rights of Counterclaim and Third-Party Plaintiffs. Counterclaim and Third-Party Plaintiffs are therefore entitled to an award of exemplary and punitive damages, in an amount deemed appropriate by the trier of fact, to punish and make an example of Cynosure.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAWS

### Cal. Bus. & Prof Code §1700, et seq.

### (Against CYNOSURE)

46. Counterclaim and Third-Party Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

47. Cal. Bus. & Prof. Code § 17500 provides: It is unlawful for any person…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…". "or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

48. The "intent" required by Section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

49. CYNOSURE claimed to offer a benefit to Counterclaim and Third-Party Plaintiffs through its partnership with BALBOA; claimed it would support Counterclaim and Third-Party Plaintiffs' marketing and business development in offering treatments through the Equipment, guaranteed the generation of business from new clients, sufficient for Counterclaim and Third-Party Plaintiffs to cover monthly payments due under the EFA, and claimed Counterclaim and Third-Party Plaintiffs could cancel the EFA at any time.

50. These claims by CYNOSURE were unfair, untrue, and misleading practices, which did, in fact, misled Counterclaim and Third-Party Plaintiffs. By these untrue and misleading statements CYNOSURE induced Counterclaim and Third-Party Plaintiffs to purchase the Equipment and to sign the EFA and failed to disclose the actual terms of the EFA.

51. As a direct and proximate result of CYNOSURE's misleading and false advertisements, Counterclaim and Third-Party Plaintiffs have suffered injury in fact

and have lost money. As such, Counterclaim and Third-Party Plaintiffs request that this Court order CYNOSURE to restore this money paid for the Equipment to Counterclaim and Third-Party Plaintiffs, and to enjoin CYNOSURE from continuing these unfair practices in violation of the California Unfair Competition Law in the future. Otherwise, Counterclaim and Third-Party Plaintiffs and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE and NELGIGENCE PER SE
## (AGAINST BALBOA)

52. Counterclaim and Third-Party Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

53. At all relevant times mentioned herein, BALBOA was a licensed California Finance Lender, subject to regulations California Financing Law, CA FIN Code §§ 22000 *et. seq.* ("CFL").

54. BALBOA as the Lender, financed the purchase of the Equipment through the consummation of a commercial loan which was solicited and procured by a person who did not hold a CFL license issued through the State of California, through a borrower referred to BALBOA by that unlicensed person.

55. Under CFL § 22603, before Counterclaim and Third-Party Plaintiffs signed the EFA, BALBOA had a duty to provide Counterclaim and Third-Party Plaintiffs as a prospective borrower, the following written statement, in 10-point font or larger, and require Counterclaim and Third-Party Plaintiffs to acknowledge receipt of the statement in writing:

> You have been referred to us by [Name of Unlicensed Person]. If you are approved for the loan, we may pay a fee to [Name of Unlicensed Person] for the successful referral. [Licensee], and not [Name of Unlicensed Person] is the sole party authorized to offer a loan to you. You should ensure that you understand any loan offer we may extend to you before agreeing to the loan terms. If you wish to report a complaint about this loan transaction, you may contact the

Department of Business Oversight at 1-866-ASK-CORP (1-866-275-2677), or file your complaint online at www.dbo.ca.gov.

56. Additionally, CFL § 22602(b) provides that, "A licensee that pays compensation to a person that is not licensed in connection with a referral for a commercial loan made by that licensee to a borrower shall be liable for any misrepresentation made to that borrower in connection with that loan." Counterclaim and Third-Party Plaintiffs were borrowers of commercial loan made by BALBOA and is in the class of persons which CFL § 22602(b) is intended to protect.

57. BALBOA breached its statutory duty to provide this written statement to the Counterclaim and Third-Party Plaintiffs. As a direct result of BALBOA's breach, Counterclaim and Third-Party Plaintiffs were under the belief that BALBOA and CYNOSURE were party of the same business, and that the representations CYNOSURE made regarding the loan and terms for financing under the EFA were true.

58. As a result of BALBOA failing to fulfill its statutory duty, Counterclaim and Third-Party Plaintiffs reasonably believed that representations made by the sales representative from CYNOSURE were true and was not on notice that BALBOA held different interests in financing the purchase of the Equipment. Accordingly, Counterclaim and Third-Party Plaintiffs obligated themselves under the EFA under the mistaken belief that the relevant representations made by CYNOSURE salesperson were true and that the execution of the EFA obligated CYNOSURE to perform on the promises it made.

59. Due to BALBOA's violation of the commercial loan provisions of the CFL which were intended to protect Borrowers like Counterclaim and Third-Party Plaintiffs, BALBOA's negligence is presumed.

60. But for BALBOA's failure to comply with its requirements of the CFL which is applicable to all license finance lenders, Counterclaim and Third-Party Plaintiffs would not have been induced to sign the EFA by CYNOSURE's

14
**DEFENDANTS' SECOND AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT**

misrepresentations as alleged above. BALBOA is further liable for all misrepresentations made by the unlicensed person per the provisions of the CFL.

## FIFTH CAUSE OF ACTION
## RESCISSION OR CANCELLATION
### (Against All Cross-Defendants)

61. Counterclaim and Third-Party Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

62. California Civil Code § 1689 expressly recognizes a party's right to rescind a contract if the consent of the party was given by mistake or obtained through fraud exercised by or with the connivance of the party seeking to enforce the contract.

63. California Civil Code § 1577 characterizes a mistake of fact as a mistake consisting of a belief in the present existence of a thing material to the contract, which does not exist.

64. California Civil Code §§ 2300 and 2317 establish the authority of an ostensible agent when the principal "intentionally or by want of ordinary care" allows a third person to believe the agent has such authority.

65. Counterclaim and Third-Party Plaintiffs' consent to the EFA was given by the mistake that CYNOSURE would provide services and support for Counterclaim and Third-Party Plaintiffs' successful and profitable use of the Equipment.

66. Counterclaim and Third-Party Plaintiffs' consent to the EFA was also obtained by the fraudulent misrepresentations made by CYNOSURE's sales representative, Cassandra, including the false promise of services and support CYNOSURE would provide to Counterclaim and Third-Party Plaintiffs, and the false representations of the financing terms under the EFA for the loan provided by BALBOA, including that Counterclaim and Third-Party Plaintiffs could cancel the EFA at any time.

67. Neither CYNOSURE, or CYNOSURE's sales representative, Cassandra, were licensed under the CFL, yet received compensation for its referral of the Counterclaim and Third-Party Plaintiffs to BALBOA for a commercial loan. Counterclaim and Third-Party Plaintiffs are informed and believe, and on that basis allege that BALBOA paid compensation to CYNOSURE in connection with the referral of Counterclaim and Third-Party Plaintiffs for a commercial loan. The CFL holds a licensed finance lender is liable for any misrepresentations made by an unlicensed person referring a borrower to that lender.

68. Additionally, as alleged in the detail in the Fourth Cause of Action, BALBOA was negligent in its failure to provide written disclosure of its sole authority to offer Counterclaim and Third-Party Plaintiffs a loan. Therefore, *if not intentionally then at least by want of ordinary care*, BALBOA allowed for CYNOSURE representative to make unchallenged false representations of the EFA and the financing of the Equipment to Counterclaim and Third-Party Plaintiffs.

69. Accordingly, by at least want or ordinary care, BALBOA allowed Counterclaim and Third-Party Plaintiffs to believe that CYNOSURE had authority, either as an agent or as a party with joint business interests as BALBOA, to represent the terms of the EFA to Counterclaim and Third-Party Plaintiffs.

70. BALBOA is responsible for CYNOSURE's fraudulent acts through ostensible agency and has statutory liability under the CFL for the misrepresentations made by CYNOSURE's representative, Cassandra. Moreover, Counterclaim and Third-Party Plaintiffs' consent to the EFA was obtained through fraud for which BALBOA is liable, and therefore the EFA is subject to rescission by Counterclaim and Third-Party Plaintiffs.

71. Counterclaim and Third-Party Plaintiffs seeks an order from this court rescinding the EFA and holding that Counterclaim and Third-Party Plaintiffs and returning the parties to their status quo ante.

/ / /

# PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim and Third-Party Plaintiffs pray for judgment as follows:

1. Awarding judgement for Counterclaim and Third-Party Plaintiffs and damages in an amount to be proven at trial;

2. Awarding rescission declaratory relief as alleged above;

3. Awarding the injunctive relief necessary to ensure that Counterclaim and Third Party Defendants' conduct alleged herein does not continue into the future;

4. An award for attorneys' fees under California Civil Code Section 1717 and/or California Code of Civil Procedure § 1033.5.

5. For legal costs, filing costs and costs of suit;

6. For interest, pre-judgment and post-judgment, on damages recoverable, and appropriate consequential and incidental damages as allowed by law; and,

7. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants and Counterclaim and Third Party Defendants demand a trial by jury on all triable claims.

ADLI LAW GROUP, P.C.

Dated: February 21, 2024    By:    */s/ Dariush G. Adli*
                                   Dariush G. Adli
                                   Jacob Mojarro
                                   *Attorneys for Defendants*
                                   MITT LARY FAMILY PRACTICE, LLC
                                   and MALIKA ARYANPURE