UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MALIKA ARYANPURE and<br>MITT LARY FAMILY PRACTICE, LLC,<br><br>Third-Party Plaintiffs<br><br>v.<br><br>CYNOSURE, LLC,<br><br>Third-Party Defendant. | Case No. 24-cv-11151-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                         **June 9, 2025**

## I.   Introduction

Third-Party Plaintiffs Malika Aryanpure ("Aryanpure") and Mitt Lary Family Practice, LLC ("Mitt") ("Plaintiffs") have filed an amended third-party complaint against Third-Party Defendant Cynosure, LLC ("Cynosure") alleging breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), breach of implied warranty of merchantability and fitness for a particular purpose (Count III), promissory estoppel (Count IV), fraud/intentional misrepresentation/deceit (Count V), negligent misrepresentation (Count VI), violations of Mass. Gen. L. c. 93A, §§ 2, 11 (Count VII) and unjust enrichment (Count VIII).  D. 94.  Cynosure has moved to dismiss all Counts.  D. 95.  For the reasons stated below, the Court ALLOWS the motion.

## II.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

1

for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled to credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III. Factual Background

#### A. Materials Outside the Pleadings

At the motion to dismiss stage, the Court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

Within the category of official public records, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)). The Court, therefore, considers Balboa's May 27, 2020 state

court complaint and Plaintiffs' May 5, 2023 state court motion for leave to file a cross-complaint against Hologic and Cynosure, which Plaintiffs attach to their opposition, D. 103-1 at 6-12; D. 103-1 at 17-38; 103-2 at 1-2.

The Court does not consider the additional exhibits attached to Plaintiffs' opposition, which appear to include an affidavit from Plaintiffs' counsel, a copy of Balboa's lending agreement, a July 25, 2019 invoice and multiple additional contractual documents, because Plaintiffs have not established why any of the limited exceptions outlined in Alternative Energy permit consideration of these documents on a motion to dismiss, D. 103-1 at 1-4; 13-15; D. 103-2 at 3-18. Alt. Energy, 267 F.3d at 33; see KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC, No. 21-cv-10572-TSH, 2021 WL 2982866, at *21 n.4 (D. Mass. July 15, 2021).

The parties dispute whether the Court can consider Exhibit A to Cynosure's motion papers, D. 96-1, which Cynosure purports is the Purchase Agreement governing the sale of the TempSure device, D. 96 at 3; see D. 94 ¶¶ 85-86. Exhibit A includes two, unnumbered pages. D. 96-1. Plaintiffs dispute that the first page is connected to the second, D. 103 at 16, and in light of this dispute, the Court does not consider this exhibit, D. 96-1. Guerre v. Cynosure, LLC, No. 23-cv-10967-ADB, 2024 WL 249384, at *4-6 (D. Mass. Jan. 23, 2024) (declining to consider a purchase agreement for a motion to dismiss because the parties dispute its authenticity).[1]

Nor have Plaintiffs waived any argument concerning the authenticity of Cynosure's Exhibit A by stipulating to the transfer of their claims to Massachusetts based upon the forum selection clause contained in the Purchase Agreement. See D. 96 at 12. Such a stipulation does not establish

---

[1] Because the Court does not consider the purported purchase agreement at this stage, it does not address whether Plaintiffs' claims for breach of contract (Count I), breach of implied warranty of merchantability and fitness for a particular purpose (Count III), promissory estoppel (Count IV) and negligent misrepresentation (Count VI) are barred by the express terms of same. D. 96 at 13-18.

that Exhibit A to Cynosure's motion papers includes the full and authentic terms of the parties' agreement. Guerre, 2024 WL 249384, at *5 (concluding that plaintiffs did not waive their argument regarding the authenticity of a purported purchase agreement attached to a motion to dismiss by referencing, in connection with a motion to transfer, a choice of law provision noted in that agreement). Nor do Plaintiffs' references to a purchase agreement in their amended complaint make any difference, D. 94 ¶¶ 18, 85; see D. 108 at 9, because those references do not establish the authenticity of the purchase agreement Cynosure attaches to its motion.

### B.  Factual Allegations

The Court draws the following factual allegations from the amended third-party complaint, D. 94, and the aforementioned exhibits, D. 103-1 at 6-12; D. 103-1 at 17-38; 103-2 at 1-2, and accepts them as true, as it must, for the purpose of resolving the motion to dismiss.

Cynosure is a Delaware corporation with a principal place of business in Westfield, Massachusetts. D. 94 ¶ 3. At the relevant time, Cynosure was a wholly owned subsidiary of Hologic, Inc., a Delaware company with a principal place of business in Marlborough, Massachusetts. Id. Cynosure develops, manufactures, markets and distributes devices with various medical and cosmetic applications. Id. ¶ 22. One of its products is the TempSure RF Platform ("TempSure"), which is accompanied by various attachments, all sold separately. Id. ¶ 25. Cynosure claims that through the use of radio waves, TempSure can increase blood flow, facilitate tissue repair and promote the production of collagen and elastin. Id. ¶ 27.

One of the TempSure attachments called "Vitalia" is, according to Cynosure "specifically designed for a woman's genitalia." Id. ¶ 29. Cynosure allegedly indicated that Vitalia could "provide a 'solution' to patients who have experienced 'changes in their vaginal health over time,'" id., and in a July 2018 statement, "described Vitalia as an 'FDA-cleared' treatment that 'delivers

therapeutic heat to internal and vaginal tissue to improve circulation,'" id. ¶ 30. According to Plaintiffs, Cynosure obtained clearance for TempSure under a fast-tracking program known as 510(k), which is "essentially a mechanism for Cynosure to register its devices." Id. ¶ 42. Cynosure has allegedly claimed that premarket approval for its applications is not needed because its technology, which heats tissue with radio waves, is sufficiently similar to that of devices "marketed in interstate commerce prior to May 28, 1976." Id. ¶ 43.

Plaintiffs allege that the FDA never "cleared" the TempSure device for "vaginal rejuvenation," and that the agency, on July 24, 2018, expressed concerns about the device to Cynosure and directed Cynosure to provide evidence that the TempSure device had been cleared for its advertised purposes or to otherwise explain why no such clearance was required. Id. ¶¶ 32-34, 44. On July 30, 2018, FDA Commissioner Scott Gottlieb issued a warning related to devices and procedures marketed for "vaginal rejuvenation." Id. ¶¶ 35-36. Gottlieb noted that "[t]he procedures use lasers and other energy-based devices to destroy or reshape vaginal tissue. These products have serious risks and don't have adequate evidence to support their use for these purposes. We are deeply concerned women are being harmed." Id. ¶ 36 (emphasis omitted). Gottlieb went on, "[a]s part of our efforts to promote women's health, the FDA has cleared or approved laser and energy-based devices for the treatment of serious conditions . . . [b]ut the safety and effectiveness of these devices hasn't been evaluated or confirmed by the FDA for 'vaginal rejuvenation.[']" Id. (emphasis omitted).

In August 2018, Cynosure acknowledged the FDA's concerns applied to the TempSure device, took it off the market and issued a recall. Id. ¶ 38. In December 2018, however, Cynosure allegedly relaunched Vitalia for the same gynecological applications, claiming it had "reviewed and updated" its "marketing and promotional materials" to make them "consistent" with FDA

"expectations."  Id. ¶ 39.  Despite these statements, Plaintiffs allege that Cynosure returned to the same marketing practices.  Id. ¶ 40.  According to Plaintiffs, the American College of Obstetricians and Gynecologists ("ACOG") continues to warn against the use of laser and energy based devices for "vaginal rejuvenation."  Id. ¶ 45.  Plaintiffs allege that Cynosure made the decision to market the TempSure device for "vaginal rejuvenation" in its Massachusetts offices, "despite an FDA warning" delivered to those offices, that it should not do so.  Id. ¶ 187.

In 2018, Cynosure hired a sales force to sell its products.  Id. ¶ 46.  As alleged, this team included Cassandra Whipple, who operated out of Atlanta, Georgia and who cold-called health practitioners throughout Georgia and Alabama.  Id. ¶¶ 47-48.  Plaintiffs allege that Whipple received her training and direction from Massachusetts, including a script of misrepresentations to make.  Id. ¶ 187.  According to Plaintiffs, when health care professionals answered the phone, Whipple represented herself as being from "Hologic" and told providers that they had been "specifically selected" for an exclusive and limited-time business offer.  Id. ¶ 49.  Whipple allegedly contacted Mitt Lary in July 2019 and secured a meeting with Aryanpure and her staff at the Mitt Lary office in Alabama.  Id. ¶ 52.

At this meeting in Alabama, Whipple allegedly made a number of false representations to Aryanpure.  For example, Whipple allegedly told Aryanpure that her practice had been specifically selected because of Aryanpure's "reputation," and that after careful study of the area's demographics, Cynosure had determined Aryanpure was "uniquely positioned" to benefit from the technology, which could add up to 20 to 30 patients per month to Mitt Lary's business.  Id. ¶¶ 53-54.  Whipple also represented that Cynosure would train the Mitt Lary staff to use the device and its attachments.  Id. ¶ 82.

In addition, Whipple claimed that if Aryanpure purchased the device, Cynosure would perform an intense and targeted marketing campaign to drive clients to the Mitt Lary office, which would include the use of "SEO technology" to ensure that Mitt Lary would appear first when prospective patients were looking for care of any kind, and promised that Mitt Lary would be assigned a "dedicated success manager" to lead the marketing effort and address Mitt Lary's needs concerning the device. Id. ¶¶ 74-75, 77. Plaintiffs allege that these representations concerning marketing were important aspects of the deal for Aryanpure. Id. ¶ 79.

Whipple also represented that Cynosure was backed by its parent company Hologic, which, according to Plaintiffs, was actually distancing itself from Cynosure at this time. Id. ¶¶ 61-63. To demonstrate Hologic's commitment, Whipple said she would put Aryanpure in touch with Mike Russo, whom she identified as "Hologic Corporate" but who was, in fact, a member of the Cynosure sales team. Id. ¶¶ 64-65. On November 20, 2019, Hologic announced it was cutting ties with Cynosure because the company had "significantly underperformed." Id. ¶ 130. Plaintiffs allege Cynosure made "fraudulent representations about its close alignment with Hologic . . . from Massachusetts." Id. ¶ 187.

Plaintiffs also allege that Whipple made several false representations about the TempSure device. For example, Whipple falsely described the TempSure device as "non-invasive," "painless" and "revolutionary," and suggested that a single treatment session as short as fifteen minutes could make the vulva "more attractive," tighten stretched vaginal muscles, reinvigorate vaginal lubrication and cure urinary incontinence. Id. ¶¶ 66, 71. Whipple also allegedly represented that the device had been cleared by the FDA for these purposes and formal approval was expected soon. Id. ¶ 72. Whipple offered Aryanpure what she falsely suggested was a one

7

time, time-constrained promotion, in which Cynosure would only sell one of these units locally, thereby protecting Aryanpure and Mitt Lary from competition. Id. ¶¶ 55-59, 84.

Within days of that first meeting, Whipple came to the Mitt Lary offices, located in Alabama, with a "Customer Purchase Agreement" and an "Equipment Financing Agreement." Id. ¶ 85. According to Plaintiffs, Aryanpure signed both agreements after Whipple "disguised" that the financing agreement was provided by a third-party lender (Balboa) and assured Aryanpure that she could return the device and cancel the financing agreement at any time. Id. ¶¶ 7-8, 86-87. Aryanpure was charged $185,027.50 for the purchase, which was allegedly to include (a) the TempSure device; (b) the Envi attachment,[2] (c) the Vitalia attachment, (d) a "Practice Transformation FTM Program," (e) a $20,000 "marketing grant," (f) a designated customer success manager, (g) an "AMPS Digital Marketing Program" and (h) a "Comprehensive Papient [sic] Pop Practice Makeover." Id. ¶ 91.

The device was delivered on August 2, 2019, and Cynosure scheduled an "all-day" training session at the Mitt Lary office in Alabama for Sunday, August 4, 2019. Id. ¶ 92. Although a Cynosure representative began the training session that day, she quickly determined the machine was inoperable and would need to be returned to Cynosure for repair, then left and did not provide further training that day. Id. ¶¶ 93-96. On August 5, 2019, Aryanpure spoke to Russo and told him she was dissatisfied with the device, the lack of training and a general lack of professionalism. Id. ¶ 99. She asked that Cynosure keep the broken device and refund her purchase. Id. Russo instead purportedly offered to make it up to Aryanpure by extending the device's warranty to five years and providing disposable covers for the Envi and Vitalia attachments. Id. ¶ 100. Plaintiffs

---

[2] "Envi" is, according to Cynosure, a "device for minimizing facial lines and wrinkles" and "improving the appearance of cellulite." Id. ¶ 31.

allege that Russo promised to note these additional terms in an email but never did, and never sent the promised accessories. Id. ¶¶ 101-02, 105.

The Cynosure training representative returned to Mitt Lary to help set up a loaner device but provided only one hour of training instead of the promised day-long session, and allegedly never provided any training for "vaginal rejuvenation" or any gynecological application of the Vitalia device. Id. ¶¶ 106, 111-12. Plaintiffs allege that the lack of training constrained Mitt Lary's ability to use the device. Id. ¶ 108.

On September 9, 2019, the repaired device was delivered to Mitt Lary and the loaner was returned. Id. ¶ 109. That same day, Aryanpure wrote to Whipple:

> I am extremely disappointed in your company, seems like once contract was signed, y'all left us in [the] dark[.]  As of today nothing has been done, I was under the impression y'all [were] helping with marketing and getting started!  Dede was supposed to come but canceled on us last minute and didn't reschedule.  Your boss Russ won't return calls.  I am pissed at myself for falling for your sales pitch.

Id. ¶ 114.  Whipple responded that she was also "in the dark" about these problems.  Id. ¶ 115. Also on September 9, Mitt Lary's office administrator wrote Cynosure concerning the lack of follow through on the promises Russo had made in his phone call but received no response. Id. ¶ 116.

Plaintiffs were underwhelmed with Cynosure's advertising efforts, which included posts on the Mitt Lary Facebook page, id. ¶¶ 117, 129, and a TempSure launch party at Mitt Lary, where Cynosure's promotional agent allegedly "showed little interest in promoting the TempSure device, or in interacting with Mitt Lary's clientele," id. ¶¶ 118-19.  Plaintiffs allege Cynosure's Facebook posts "drew virtually no comment, and no customers." Id. ¶ 135.  In addition, Plaintiffs allege that Cynosure's promise of regional exclusivity was also untrue. Id. ¶ 136.

9

Plaintiffs allege the Vitalia attachment could not achieve "vaginal rejuvenation" as advertised, and Mitt Lary's test patient complained of intense pain when the device was used. Id. ¶ 126. Plaintiffs allege that "[i]n the end, hardly any patients sought out Mitt Lary's practice for this treatment." Id. ¶ 138. Throughout the fall 2019, Aryanpure expressed frustration to Cynosure representatives concerning Cynosure's alleged failure to fulfill its promises. Id. ¶¶ 121-22, 127-28, 132. Mitt Lary sought to pause payments on the TempSure device, but Balboa would not agree. Id. ¶¶ 140-41.

In May 2020, Balboa sued Plaintiffs in California state court for failure to maintain payments under the financing agreement. Id. ¶¶ 8, 141. In May 2023, Plaintiffs moved to amend their answer to add counterclaims against Balboa and third-party claims against Cynosure and Hologic. Id. ¶ 9. Shortly thereafter, but before a ruling on its motion to amend and add its third-party claims, Balboa voluntarily dismissed the state court complaint. Id. ¶ 10.

**IV.    Procedural History**

On May 26, 2023, after voluntarily dismissing the state court complaint, Balboa instituted this action in the United States District Court for the Central District of California. D. 1; D. 94 ¶ 11. On November 2, 2023, Plaintiffs filed their answer and third-party complaint, naming Cynosure and Hologic as third-party defendants. D. 23. Cynosure moved to transfer the claims against it to this Court, D. 59, Plaintiffs stipulated to the change in venue with respect to the claims against Cynosure, D. 70, and the case was transferred, D. 74. Once transferred, Plaintiffs amended their third-party complaint and now assert claims only against Cynosure. D. 94. Cynosure has now moved to dismiss. D. 95. The Court heard the parties on the pending motion and took this matter under advisement. D. 110.

V.     Discussion

    A.     **Statutes of Limitations**

        1.     *Applicable Limitations Periods*

The parties do not contest "that a limitations period of not more than four years applies to the contract claims (Counts I-III), the Chapter 93A claim (Count VII) and the unjust enrichment claim (Count VIII), and that a limitations period of not more than three years applies to the misrepresentation claims (Counts V and VI)." D. 103 at 3; see D. 96 at 6-8. Nor do the parties appear to dispute that the applicable statutes of limitations began to accrue prior to November 2, 2019. D. 96 at 8; D. 103 at 5-9. The parties do, however, dispute the applicable statute of limitations for the promissory estoppel claim. D. 96 at 7; D. 103 at 4-5; D. 108 at 6-7.

According to Cynosure, the promissory estoppel claim is subject to the same four-year limitations period as the contract claims because it arises from the sale of the device. D. 96 at 7; D. 108 at 6-7. Plaintiffs, relying upon Charest v. President and Fellows of Harvard College, 13-cv-11556-DPW, 2016 WL 614368, at *13 (D. Mass. 2016), suggest that all promissory estoppel claims are subject to a six-year statute of limitations. D. 103 at 4-5. But the court in Charest was simply citing Mass. Gen. L. c. 260, § 2, which provides that the default statute of limitations for actions arising under contracts "except as otherwise provided" is six years. Mass. Gen. L. c. 260, § 2; Charest, 2016 WL 614368, at *13. Here, with respect to the contract claims, the parties agree that the four-year statute of limitations set by Mass. Gen. L. c. 106, § 2-725 rather than the six-year statute of limitations set by Mass. Gen. L. c. 260, § 2 applies because Plaintiffs' action is for breach of a contract for a sale. D. 96 at 8; D. 103 at 3 (noting that "[f]or the purposes of this Rule 12(b)(6) analysis, Dr. Aryanpure does not contest Cynosure's assertions that a limitations period of not more than four years applies to the contract claims"); see D. 108 at 6-7. Under

11

Massachusetts law, "the statute of limitations applicable to contract actions likewise applies to promissory estoppel claims." Arborway Comm. v. Exec. Off. of Transp. & Constr., No. SU-cv-2007-00675-E, 2009 WL 1546638, at *5 (Mass. Super. May 26, 2009); see Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991) (noting that "equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy"). Plaintiffs' promissory estoppel claim is, therefore, subject to a four-year statute of limitations.

> 2. *Plaintiffs' Complaint is Considered "Filed" For the Purpose of the Statute of Limitations Analysis on November 2, 2023, Past the Expiration of the Applicable Limitations Periods.*

Plaintiffs suggest that the amended pleading adding Cynosure as a third-party defendant relates back to May 2020, the date Balboa filed its original complaint against Dr. Aryanpure in state court. D. 103 at 5-6. Federal Rule of Civil Procedure 15(c) permits relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(b). In addition, Rule 15(c) permits relation back when "the law that provides the applicable statute of limitations," here, Massachusetts, "allows relation back." Fed. R. Civ. P. 15(c)(1)(a); see Coons v. Indus. Knife Co., 620 F.3d 38, 42 (1st Cir. 2010). The Massachusetts rule regarding relation back is similar to the federal rule and permits relation back "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Mass. R. Civ. P. 15(c).

Neither test is satisfied here. Plaintiffs argue their complaint relates back to the original pleading because "[b]oth pleadings relate to the facts and circumstances of the TempSure Device purchase, the applicable price and lending terms, and the parties' post-purchase exercise of their relevant rights and obligations." D. 103 at 6. Here, Plaintiffs' alleged injury, which stems from

12

Cynosure's purported misrepresentations, is distinct from the injury alleged in Balboa's original complaint, which was Plaintiffs' nonpayment under the financing agreement.  Compare D. 94 with D. 103-1 at 6-12.  As Cynosure observes, Balboa's complaint does not even refer to Cynosure and does not plead fraud or deception.  See D. 103-1 at 6-12; D. 108 at 5.[3]  Thus, even under "a liberal policy allowing amendments which add or substitute parties after the statute of limitations has expired," Pessotti v. Eagle Mfg. Co., 774 F. Supp. 669, 679 (D. Mass. 1990), aff'd, 946 F.2d 974 (1st Cir. 1991), Plaintiffs' amendment cannot relate back to Cynosure's, because it seeks recovery for a different injury than that alleged in the original complaint.  See Langlois v. First Student, Inc., No. 2008243, 2010 WL 3038724, at *2 (Mass. Super. July 7, 2010) (concluding a third-party claim did not relate back to the original pleading because it "seeks recovery for a harm not even obscurely referenced by the initial pleadings and in no way bears upon [third-party claimant's] ability to defend the [original] suit against him"); James W. Flett Constr. Co. v. Sciaba Constr. Corp., No. 93-cv-0502, 1995 WL 476749, at *3 (Mass. Super. Aug. 8, 1995) (observing that "[t]he crucial question . . . is whether [plaintiff] seeks from [defendant] recovery for the same injury for which it sought recovery in the original complaint").[4]

In the alternative, Plaintiffs argue that "Balboa's voluntary dismissal of the California state court action is considered a dismissal 'as a matter of form' as to the Third-Party Plaintiffs, such

---

[3] At oral argument, Plaintiffs likened this case to Haigh v. Gupta, No. 944194, 1996 WL 1186859, at *1 (Mass. Super. Aug. 26, 1996), in which the court concluded a contribution claim brought by a defendant and adding third-party party defendants would relate back to the filing of the original complaint.  Id.  But while the court in Haigh noted that the contribution claim was derivative of the plaintiff's claim, and as such "arose out of the conduct, transaction or occurrence set forth in the original pleading," id. (citing Mass. R. Civ. P. 15(c)), here, as discussed, the third-party complaint instead raises different claims related to a different injury.

[4] The third-party complaint does not relate back to Balboa's May 2023 federal court complaint for the same reason:  Plaintiffs seek recovery for a different injury than that alleged in the original complaint.

13

that they were allowed by the applicable savings statute, Mass. Gen. L. c.[] 260, § 32, to refile their complaint within one year, any interstitial expiry of the statute of limitations notwithstanding." D. 103 at 6.  The savings statute provides that "[i]f an action duly commenced within the time limited in this chapter is dismissed . . . for any matter of form . . . the plaintiff or any person claiming under him may commence a new action for the same cause within one year after the dismissal . . . of the original action." Mass. Gen. L. c. 260, § 32.  This argument fails because the Third-party Plaintiffs here were defendants, not plaintiffs in the prior action, and they did not make a claim against Balboa, the plaintiff in the prior action.[5]

For these reasons, the Court determines that Plaintiffs' third-party complaint against Cynosure is considered "filed" for the purpose of the statute of limitations analysis on November 2, 2023, meaning all of Plaintiffs' claims are barred by the applicable three or four-year limitations periods.[6]

---

[5] To the extent that Plaintiffs, relying upon Nett v. Bellucci, 437 Mass. 630, 639-44 (2002), suggest that they were plaintiffs in the original action because they filed a motion to amend, Nett does not support their contention. D. 103 at 5. In Nett, 437 Mass. at 630, the Supreme Judicial Court considered the claims of a plaintiff who had amended her complaint to add a defendant and addressed whether "the operative date for commencement of an action for purposes of the Massachusetts statutes of repose [is] the date of filing of a motion and supporting memorandum for leave to amend a complaint to add a party (assuming timely service)" or "the date the amended complaint is filed after leave of court is granted." Id.; see D. 108 at 3. After assuming timely service was made, the Nett court found "[t]he operative date for commencement of an action for purposes of a statute of repose is the date of filing of a motion for leave to amend a complaint to add a party[.]" Nett, 437 Mass. at 631. In reaching this conclusion, the Court emphasized the importance of the defendant receiving notice and noted that the local rule at issue "require[d] that the motion to amend be served on the proposed defendant prior to the filing of the motion." Id. at 640. Nett, therefore, does not control here, where Cynosure did not receive notice of the motion to amend before the action was dismissed in California state court and the court never ruled on the request for leave to amend. See D. 108 at 3-4.

[6] In light of the Court's ruling that Plaintiffs' claims are barred by the relevant statutes of limitations, Plaintiffs' amended motion for leave to file a second amended complaint, D. 115, and Plaintiffs' motion for leave to file a reply in support of its motion for leave to amend, D. 120, are DENIED as moot. Similarly, the Court need not reach Cynosure's alternative argument that

14

> 3. *Plaintiffs Are Not Entitled to Discovery Regarding the Dismissal of the State Court Action*

Plaintiffs ask that if "the Court considers it appropriate to consider the statute-of-limitations defense at this stage, Dr. Aryanpure should be permitted to conduct discovery into the dismissal of the California state court action" to determine whether equitable tolling is appropriate. D. 103 at 8-9.

"A limitations period can . . . be equitably tolled when 'some affirmative misconduct by the party against whom it is employed' causes the other party to miss a filing deadline." SiOnyx, LLC v. Hamamatsu Photonics K.K., 332 F. Supp. 3d 446, 467 (D. Mass. 2018) (quoting Kelley v. N.L.R.B., 79 F.3d 1238, 1248 (1st Cir. 1996)). When considering whether a limitations period should be equitably tolled, courts consider "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Id. (quoting Kelley, 79 F.3d at 1248).

Plaintiffs have failed to plausibly make any of these showings and have also failed to even suggest any "affirmative misconduct by the party against whom [the statute of limitations] is employed" — here, Cynosure. Id.; D. 103 at 8-9. Instead, they merely contend "[t]here are reasonable grounds to suspect that Balboa Capital dismissed the California state court action in an attempt to impair the ability to assert claims against Cynosure." Id. at 9. But Plaintiffs do not provide any explanation for why Balboa's actions prevented them from filing their complaint within the limitations periods. See id. at 8-9. Even as alleged, Balboa filed its complaint in federal court on May 26, 2023, just ten days after it voluntarily dismissed the state court action, leaving

---

"Plaintiffs' Chapter 93A claim fails because the alleged conduct did not occur primarily and substantially in Massachusetts" as required by Mass. Gen. L. c. 93A, § 11. D. 96 at 10-13.

15

Plaintiffs time to file their third-party complaint within the applicable limitations periods.  D. 1; D. 94 ¶ 11.  For these reasons, the Court denies Plaintiffs' request for discovery.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Cynosure's motion to dismiss the third-party complaint, D. 95.[7]

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[7] In light of the Court's dismissal of the complaint, Defendants' motion to stay discovery pending ruling on its motion to dismiss, D. 117, and its assented motion for leave to file a reply in opposition to the motion to stay discovery, D. 121, are DENIED as moot.